IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST John V. ASHER:

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY, n/k/a Office of Lawyer Regulation, Complainant,

v.

John V. ASHER, Respondent.

Supreme Court

*No.  00–2661–D.  Filed February 27, 2001.*

## 2001 WI 12

(Also reported in 622 N.W.2d 746.)

¶ 1. PER CURIAM. We review the findings of fact, conclusions of law, and recommendation for discipline of the referee, Charles J. Herro[1] pursuant to SCR 21.09(5).[2] Attorney Asher was found to have engaged in numerous instances of unprofessional conduct in the

---

[1] Effective October 1, 2000, Wisconsin's attorney disciplinary process underwent a substantial restructuring. The name of the body responsible for investigating and prosecuting cases involving attorney misconduct was changed from the Board of Attorneys Professional Responsibility (Board) to the Office of Lawyer Regulation, and the Supreme Court rules applicable to the lawyer regulation system were also revised. Since the conduct underlying this case arose prior to October 1, 2000, all references will be to the Board and to the Supreme Court rules in effect prior to October 1, 2000.

[2] Former SCR 21.09(5) provided, in pertinent part:

(5) The referee shall, within 30 days of the conclusion of the hearing, file with the clerk of the supreme court a report stating his or her findings and disposition of the complaint or petition by recommendation of dismissal or imposition of discipline as provided in SCR 21.06 or suspension or conditions upon the continued practice of law for medical incapacity. The board or the attorney may file an appeal of the referee's report with the supreme court within 20 days of the filing of the report. *If no appeal is timely filed, the supreme court shall review the referee's report and determine appropriate discipline in cases of misconduct* and appropriate action in cases of medical incapacity and may, on its own motion, within 30 days of the expiration of the time for appeal, order the parties to file briefs in the matter or extend the time in which it may order briefs. (Emphasis added.)

course of his practice of law in violation of the rules of professional conduct. The referee has recommended that Attorney Asher's license to practice law be revoked, that restitution be paid to several clients, and that the costs of these proceedings be paid.

¶ 2. We approve the findings, conclusions and recommendations of the referee and determine that the seriousness of Attorney Asher's misconduct warrants the imposition of these sanctions.

¶ 3. Attorney Asher was admitted to the practice of law in Wisconsin in 1984 and had his office in Dousman. He has no prior attorney disciplinary history.

¶ 4. On October 2, 2000, the Board issued a complaint against Attorney Asher ordering him to answer within 20 days. He responded that he would not be filing any formal response and would not participate in the disciplinary proceedings. On October 24, 2000, the Board moved the referee for an order determining that he was in default for failing to answer the complaint and for an order requesting that the referee accept as true and correct and uncontested the allegations found within the Board's complaint. The referee conducted a telephone hearing on the motion on November 14, 2000, and granted the motion on November 20, 2000. The referee then issued his findings, conclusions and recommendation for discipline on November 22, 2000.[3]

---

[3] On September 2, 1999, prior to the receipt by the Board of many of the client grievances that formed the basis for this proceeding, Attorney Asher submitted his resignation from the State Bar of Wisconsin to this court which it accepted on September 13, 1999. However, the Board subsequently moved to vacate the order because it had commenced its investigation into these matters. This court determined on October 27, 1999, to hold the motion in abeyance pending notification that the Board had completed its investigation.

¶ 5. A general description of the facts and circumstances leading to these disciplinary proceedings is necessary. In 1984, Attorney Asher incorporated a law firm which he named the Christian Law Center ("CLC"). This was solely his firm, although he may have employed one or more associates or others at various times. In general, the CLC advertised extensively and handled a high volume of relatively low-asset personal bankruptcies. At the same time, Attorney Asher was also the minister of a church he had founded and also operated other business enterprises.

¶ 6. During the late summer of 1999, it was widely reported in the media that Attorney Asher had extremely serious problems, both financially and regarding appropriate legal representation of his clients. Around that time, he twice relocated his offices, and notified his clients by letter dated August 27, 1999, that he was forced to close the CLC due to financial problems. Up to that time, however, he continued to accept retainer and filing fee payments from clients for work to be performed, much of which went unperformed.

¶ 7. From that time on, until mid–2000, the Board received numerous grievances from clients alleging that they had paid funds to Attorney Asher for bankruptcy filing fees and retainers in cases which ultimately were never filed by him. The Board's complaint alleged 233 violations of the rules of professional conduct relating to 58 clients.

¶ 8. The first set of these allegations, 51 counts each, involve simultaneous violations of SCR 20:1.15(a),[4] failure to deposit client funds into a trust

---

[4] SCR 20:1.15(a) provides:

    (a) A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in

account and, SCR 20:8.4(c),[5] engaging in conduct involving dishonesty, fraud, deceit or misrepresentation arising out of converting funds of the client to the attorney's own use. Attorney ·Asher's trust account, entitled "Christian Law Center of WI, S.C., IOLTA," was essentially inactive throughout its existence in 1998–99. His account at another bank, entitled "Christian Law Center of Wisconsin, S.C., Filing Fee Account," was apparently opened in early 1998. Bank records show this second account to be active during its

the lawyer's possession in connection with a representation or when acting in a fiduciary capacity. Funds held in connection with a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise. All funds of clients and third persons paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c). The trust account shall be maintained in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The trust account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay or avoid imposition of account service charges, may be deposited in such an account. Unless the client otherwise directs in writing, securities in bearer form shall be kept by the attorney in a safe deposit box in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The safe deposit box shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. Other property of a client or third person shall be identified as such and appropriately safeguarded. If a lawyer also licensed in another state is entrusted with funds or property in connection with an out-of-state representation, this provision shall not supersede the trust account rules of the other state.

[5] SCR 20:8.4(c) provides:

It is professional misconduct for a lawyer to:
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

six-month existence. For the first two months it existed, the second account was used for the deposit and payment of bankruptcy filing fees but was not used exclusively for this purpose. A number of checks from this account were made payable to Attorney Asher and his employees. Seven checks written in February and March of 1999 were returned for reason of insufficient funds in the account. Thereafter, checks totaling in the tens of thousands of dollars were written to employees and to pay office expenses. After early April of 1998, none of the checks drawn on the filing fee account were payable to the United States Bankruptcy Clerk. The account was again occasionally overdrawn and account activity began to taper off. The filing fee account was closed in July of 1998. Attorney Asher declared on August 27, 1999, that he did not have on deposit, in trust, any filing fees paid to him by clients. After that date, he never reimbursed any client for filing fees he received but had not paid to the bankruptcy clerk.

¶ 9. We find that Attorney Asher has committed 51 violations of SCR 20:1.15(a) and 51 violations of SCR 20:8.4(c). We further adopt the referee's finding that the amount converted by Attorney Asher, based on the statements and proofs of payment provided by only those clients who filed grievances against him, was $8900.

¶ 10. The second set of allegations concern 53 violations of SCR 20:1.16(d),[6] unearned fees that attor-

---

[6] SCR 20:1.16(d) provides:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

ney failed to return to clients. These violations arise out of the above-described circumstances in which clients paid retainers to Attorney Asher who did not then file bankruptcies on their behalf. Although he or his staff may have spent some time with some clients or even partially completed documents, the clients involved received no value from Attorney Asher or the bankruptcy was never actually filed by him.

¶ 11. We find that Attorney Asher has therefore committed 53 violations of SCR 20:1.16(d). We further adopt the referee's finding that these unearned fees were $33,811.50.

¶ 12. The third set of allegations concern 18 violations of SCR 20:1.3,[7] failing to act with reasonable diligence and promptness in representing a client. These violations concern the above-described instances where clients had paid the attorney fees in full but Attorney Asher did not timely file the bankruptcy action. The Board has not alleged possible violations of this nature when the fees were paid very shortly before the closing of Attorney Asher's law office.

¶ 13. We find that Attorney Asher has committed 18 violations of SCR 20:1.3.

¶ 14. The fourth set of allegations concern three violations of SCR 20:1.4(a),[8] failure to keep a client reasonably informed about the status of a matter and to comply with a client's reasonable requests for infor-

---

[7] SCR 20:1.3 provides:

Diligence
A lawyer shall act with reasonable diligence and promptness in representing a client.

[8] SCR 20:1.4(a) provides:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

mation. These instances concern those clients who complained that Attorney Asher's staff repeatedly put them off when they called to make inquiries or simply received no response whatsoever to their telephone messages.

¶ 15.   We find that Attorney Asher has committed three violations of SCR 20:1.4(a).

¶ 16.   The fifth set of allegations concern one violation of SCR 20:1.16(a)(3),[9] representing a client after discharge. This concerns the one instance in which Attorney Asher filed a bankruptcy action after he was discharged by his client.

¶ 17.   We find that Attorney Asher has committed one violation of SCR 20:1.16(a)(3).

¶ 18.   The sixth set of allegations concern 56 violations of SCR 22.07(3),[10] failure to cooperate with the Board's investigation. Of the 58 client matters referenced within its complaint Attorney Asher cooperated with only one Board investigation. In another matter, an inquiry was sent to him but the Board did not request a response. As to the remaining 56 client matters in which the Board conducted an investigation, Attorney Asher made no response to the initial inquir-

---

[9] SCR 20:1.16(a)(3) provides:

(a)   Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(3)   the lawyer is discharged.

[10] Former SCR 22.07(3) provided:

(3)   The administrator or committee may compel the respondent to answer questions, furnish documents and present any information deemed relevant to the investigation. Failure of the respondent to answer questions, furnish documents or present relevant information is misconduct. The administrator or a committee may compel any other person to produce pertinent books, papers and documents under SCR 22.22.

205

ies from the Board. Some inquiries did not generate a response whatsoever. Other inquiries were returned to the Board marked "Refused–Return to Sender." Finally, some inquiries were returned by the United States Post Office with the indication that Attorney Asher had moved and left no forwarding address.

¶ 19. We find that Attorney Asher has committed 56 violations of SCR 22.07(3).

¶ 20. We further adopt the referee's recommendation for discipline which, in turn, adopted the Board's request in its complaint. The referee's overall recommendation is appropriate discipline for the professional misconduct demonstrated in this case. Attorney Asher's misconduct with his clients and with respect to his Board obligations were serious, multiple failings warranting severe sanction.

¶ 21. Accordingly, it is appropriate that: (1) the license of Attorney Asher to practice law in this state be revoked; (2) that within 60 days Attorney Asher make restitution for the $8900 that he converted and for the $33,811.50 unearned fees he failed to return to clients, as generally described above and as more specifically alleged in the individual client matters described in Board's complaint; and, (3) Attorney Asher pay the $1361.25 costs of these proceedings.

¶ 22. It Is Ordered that the September 13, 1999, order of this court accepting the resignation of Attorney John V. Asher from the State Bar of Wisconsin is vacated.

¶ 23. It Is Further Ordered that the license of Attorney John V. Asher to practice law in the state of Wisconsin be revoked, effective the date of this order.

¶ 24. It Is Further Ordered that John V. Asher comply with the provisions of SCR 22.26 concerning

the duties of an attorney whose license to practice law has been revoked.

¶ 25.   IT IS FURTHER ORDERED that within 60 days of the date of this order John V. Asher shall pay to his former clients, pursuant to paragraphs 5–12, 15–40, 43–60, 63–114, and 119–122 of the Board's complaint, $8900 and $33,811.50 with interest at 5% from July 1, 2000.

¶ 26.   IT IS FURTHER ORDERED that within 60 days of the date of this order John V. Asher shall pay $1361.25 to the Office of Lawyer Regulation representing the costs of this proceeding.